IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDERAMAN OUMAR YAIDE,<br>　　　　Plaintiff,<br>　　v.<br>CHAD WOLF, et al.,<br>　　　　Defendants. | Case No. 19-cv-07874-CRB<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER** |

Abderaman Oumar Yaide is a native and citizen of Chad who has resided in the United States without legal status since 2009. His application for asylum based on ethnicity and imputed political opinion was denied by an immigration judge in 2014. Since that time, Yaide has come out as gay and Chad has criminalized all same-sex relations. Given those developments, Yaide fears torture and death if he is returned to Chad. He has therefore filed a motion to reopen his applications for asylum, withholding of removal, and relief under the Convention Against Torture. But before that motion could be adjudicated, Immigration and Customs Enforcement ("ICE") deported Yaide to Chad.

Yaide now seeks a Temporary Restraining Order ("TRO") directing the Government to return him to the United States. The Government does not argue that a TRO is unwarranted on the merits. Instead, it insists that this Court lacks jurisdiction over Yaide's habeas petition. But because Yaide was in ICE custody when his petition was filed and challenges his removal on constitutional grounds, the Government's jurisdictional arguments fail, and the Court will grant his request for a TRO.

## I. BACKGROUND

Yaide is a native and citizen of Chad. Yaide Decl. ¶ 1 (dkt. 3-2). He arrived in the United States in 2009, seeking asylum on the basis of his membership in the Gorane ethnic group and imputed anti-government political opinions. Id. ¶¶ 3, 20. His application for asylum was denied by the immigration judge and Board of Immigration Appeals. Id. ¶ 20, 23.

Yaide is gay, but did not come out publicly until 2019, after his case was adjudicated by the immigration judge. Id. ¶ 25. Since that time, Chad has criminalized all same-sex relations. Mot. to Reopen at 7 (dkt. 3-1). Yaide fears that if he remains in Chad he will be tortured and killed by his own family, clan, or the government. Yaide Decl. ¶ 28.

On October 24, 2019, Yaide filed a motion to reopen his applications for asylum, withholding of removal, and relief under the Convention Against Torture based on changed circumstances, including his coming out as gay and the deteriorating conditions for LGBT individuals in Chad. Mot. to Reopen at 1, 14.

While Yaide's motion to reopen was pending before the immigration court, Yaide was taken from Yuba County Jail to the Sacramento airport. Second McMahon Decl. ¶¶ 10–11 (dkt. 18-1). From Sacramento he was flown to Chicago, then to Addis Ababa, Ethiopia, and finally to N'Djamena, Chad. Id. ¶ 12. Yaide was accompanied by the same pair of ICE officers from Yuba County Jail to the N'Djamena airport, and remained in handcuffs until his arrival in Addis Ababa. Id.

The instant habeas petition was filed while Yaide was en route from Chicago to Addis Ababa. Yaide Supp. Brief at 4 (dkt. 18); Yaide Itinerary (dkt. 14-2). Shortly thereafter, Judge Chen enjoined Yaide's removal until the Court had ruled on a fully-briefed motion for a TRO. EMC TRO (dkt. 10). At the time Judge Chen issued the emergency TRO, Yaide was in the air, on his way to Addis Ababa. Yaide Supp. Brief at 4; Yaide Itinerary.

Yaide now seeks a TRO ordering his return to the United States. See Reply at 1 (dkt. 16). He asserts multiple causes of action, including a claim that his deportation violates his procedural due process right to pursue his motion to reopen.[1] Petition ¶¶ 34–36 (dkt. 1).

---

[1] As discussed below, Yaide's due process claim is sufficient to establish both jurisdiction over

2

## II. LEGAL STANDARD

A TRO is an "extraordinary remedy" that should only be awarded upon a clear showing that the plaintiff is entitled to such relief. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The party seeking a TRO must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. See id. at 20. Alternatively, the moving party must demonstrate that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor," and that the other two Winter elements are met. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). The "[l]ikelihood of success on the merits 'is the most important' Winter factor." Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017).

## III. DISCUSSION

The key dispute is whether or not this Court has subject matter jurisdiction over Yaide's habeas petition.

### A. Jurisdiction

The Government advances two theories for the non-existence of subject matter jurisdiction. First, that Yaide had already been removed when his habeas petiton was filed and was therefore no longer "in custody" as required for this Court to have jurisdiction. Opp'n at 4 (dkt. 14) (citing 28. U.S.C. § 2241(c)). Second, that 8 U.S.C. § 1252(g) divests this Court of jurisdiction, because Yaide's habeas petition challenges his removal order. Gov's Supp. Brief at 2.

#### 1. Custody

28 U.S.C. § 2241(c) provides for jurisdiction over a habeas petition only if the petitioner is "in custody" at the time his habeas petition is filed. Maleng v. Cook, 490 U.S. 488, 490–91 (1989). This requirement is satisfied by either "physical imprisonment" or "other restraints on . . . liberty . . . not shared by the public generally." Jones v. Cunningham, 371 U.S. 236, 240 (1963).

---

his petition and his right to a TRO. The Court therefore need not address his other causes of action at this time.

3

The Ninth Circuit has held that "[i]mmigrants who have already been removed . . . do not satisfy the 'in custody' requirement of habeas corpus jurisdiction" because they are "subject to no greater restraint than any other non-citizen living outside American borders." Miranda v. Reno, 238 F.3d 1156, 1159 (9th Cir. 2001). At oral argument, the Government argued that this rule applies here, because 8 U.S.C. § 1101(g) states that a non-citizen "ordered deported or removed" "shall be considered to have been deported or removed" if he "has left the United States." The Government reasons that under § 1101(g) Yaide was removed once he left the United States, and that under Ninth Circuit precedent Yaide was no longer in custody once he was removed. Therefore, Yaide was no longer in custody after leaving American airspace.

The Government's cases are distinguishable because they dealt with petitioners who had already arrived in the country to which they were removed when their habeas petitions were filed. Id. at 1158; Veltmann-Barragan v. Holder, 717 F.3d 1086, 1087 (9th Cir. 2013). In contrast, Yaide was en route to Ethiopia when his petition was filed. See Yaide Itinerary. At the time, he was handcuffed, escorted by two ICE agents, and trapped on an airplane he had been placed on against his will. Second McMahon Decl. ¶ 12. He was subject to both physical detention and greater restraints than other non-citizens outside American borders. See Jones, 371 U.S. at 240. The facts of Yaide's removal—not to mention common sense—demonstrate the inapplicability of the logic of Ninth Circuit cases dealing with habeas petitions filed after the petitioner's removal was complete.

Section 1101(g) does not require a different result. This provision does not purport to define "removal" for purposes of § 2241's "in custody" requirement, and neither of the Ninth Circuit cases the Government cites discusses § 1101(g). It would be formalistic to the point of absurdity to import § 1101(g)'s definition of removal to the habeas context, such that a man in shackles, trapped on a plane thousands of feet in the air, and in the company of two ICE agents, would not be considered "in custody."

### 2. 8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) strips courts of jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings,

4

adjudicate cases, or execute removal orders against any alien." The Government contends that § 1252(g) applies to Yaide's habeas petition, because it challenges the execution of his removal order.[2] See generally Gov's Supp. Brief.

The Ninth Circuit has rejected § 1252(g)'s application to habeas petitions brought under § 2241, noting "the Supreme Court's narrow construction of 8 U.S.C. § 1252(g)" and that "neither AEDPA nor IIRIRA expressly repealed statutory habeas corpus relief pursuant to 28 U.S.C. § 2241." Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999). As such, "[a]liens may file § 2241 habeas petitions that allege constitutional or statutory error in the removal process." Gutierrez-Chaves v. I.N.S., 298 F.3d 824, 829–30 (9th Cir. 2002). On the other hand, "[h]abeas petitions that . . . do not allege such error but simply seek to change the discretionary result reached by the INS are not within the scope of § 2241 and should be denied." Id. at 830.

Because Yaide's due process claim alleges "constitutional or statutory error in the removal process," and is not an attempt "to change the discretionary result reached by the INS," it is not subject to jurisdiction stripping under § 1252(g). Yaide contends that if he is removed to Chad, he will be deprived of his right to have his motion to reopen adjudicated, violating his right to procedural due process. Petition ¶ 34–36. Yaide credibly contends that he will be imprisoned, harmed, or killed in Chad on account of his sexual orientation. Petition ¶ 36. Obviously, imprisonment or death would foreclose Yaide's ability to pursue his motion to reopen. Notably, the danger Yaide faces based on his sexual orientation was not presented to the immigration court during the earlier proceedings, so evaluating the possibility that removal will prevent Yaide from pursuing his motion to reopen does not require this Court to re-litigate the merits of his original order of removal. Mot. to Reopen at 2.

This conclusion accords with an earlier Northern District of California decision, Sied v. Nielsen. Sied argued that if he were deported to Eritrea, he might "face detention, interrogation,

---

[2] The Government does not argue that other jurisdiction-stripping provisions in § 1252, such as §§ 1252(a)(5), (b)(9), or (d)(1), divest this Court of jurisdiction over Yaide's petition. See generally Opp'n, Gov's Supp. Brief. In any event, other Northern District of California decisions have rejected arguments that these provisions remove jurisdiction over essentially identical claims. See Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1142202, at *15–20 (9th Cir. March 2, 2018).

5

torture, and death," which "would effectively deprive him of his due-process right to have his motion to reopen heard." Id. at *6. Judge Beeler concluded that § 1252(g) did not divest the court of jurisdiction over Sied's habeas petition, because the petition asserted "claims of due-process violations" rather than a "challenge [to] the Attorney General's discretionary authority." Id. at *21 (quoting United States v. Hovespian, 359 F.3d 1144, 1155 (9th Cir. 2004). Sied is directly on-point and confirms that a due process claim like Yaide's removes his petition from § 1252(g)'s reach.

It is true that some Northern District of California decisions have reached the opposite conclusion on similar facts, holding that § 1252(g) strips courts of jurisdiction over habeas petitions seeking to enjoin removal during the pendency of a motion to reopen. Ma v. Holder, 860 F. Supp. 2d 1048, 1056–60 (N.D. Cal. 2012) Arce v. Holder, No. C 12-04063 WHA, 2012 WL 3276994, *2–3 (N.D. Cal. Aug. 9, 2012). And at least one other court has reached a similar result on comparable facts, rejecting what it characterized as the petitioner's "attempts to frame his arguments as 'constitutional challenges,'" when in reality "the petition [was] wholly intertwined with the merits of his removal order." Flores v. Johnson, No. CV 15-7167 AG (JPRx), 2015 WL 12656240, at *3 (C.D. Cal. Sept. 30, 2015). These cases appear to be distinguishable because they did not involve due process claims comparable to those asserted by Yaide and Sied.

To the extent the Government's cases and Sied are irreconcilable, the Court finds Sied more persuasive. Sied's holding and result are more easily reconciled with the Ninth Circuit's recognition that "[a]liens may file § 2241 habeas petitions that allege constitutional or statutory error in the removal process," Gutierrez-Chaves, 298 F.3d at 829–30, and the Supreme Court's "narrow" construction of § 1252(g), Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999).

### B. The Winter Factors

The Government does not argue that a TRO is inappropriate on the merits. See generally Opp'n, Gov's Supp. Brief. In any event, the Court concludes Yaide has satisfied the standard for a TRO.

### 1. Success on the Merits

Yaide has a constitutional right to procedural due process. Wong v. United States, 373 F.3d 952, 971 (9th Cir. 2004). He also enjoys a statutory right to file a motion to reopen his removal proceedings. Mata v. Lynch, 135 S. Ct. 2150, 2153 (2015). The Ninth Circuit has recognized that it would be "absurd" to "allow motions to reopen to be filed but not heard." Azarte v. Ashcroft, 394 F.3d 1278, 1289 (9th Cir. 2005), overruled on other grounds by Dada v. Mukasey, 554 U.S. 1 (2008). If Yaide is imprisoned or killed in Chad, the Government will have denied him any chance to have his motion to reopen adjudicated. Sied, 2018 WL 1142202, at *26. Yaide has at least raised serious going to the merits. Cottrell, 632 F.3d at 1131–32.

### 2. Irreparable Harm

Yaide faces irreparable harm, both because "the deprivation of constitutional rights unquestionably constitutes irreparable injury," Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2018) (internal quotation marks and citations omitted), and because "[t]orture and death are irreparable harm," Sied, 2018 WL 1142202, at *27.

### 3. Balance of Equities

The balance of equities tips sharply in Yaide's avor. He faces the loss of his right to have his motion to reopen adjudicated, torture, imprisonment, and death. For its part, the Government identifies no hardship it will undergo if a TRO is issued.

### 4. Public Interest

The public does have an interest "in prompt execution of removal orders." Nken v. Holder, 556 U.S. 418, 436 (2009). However, in this case that interest is outweighed by the public's interest in the preservation of Yaide's constitutional rights. Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

## IV. CONCLUSION

For the foregoing reasons, Yaide's motion for a TRO is granted. This order will be stayed until 5:00 PM on Friday, December 20, 2019, so that the Government may seek

relief from the Ninth Circuit. Once the order goes into effect, the Government is ordered to 1) buy Yaide an airline ticket that will return him to the United States within two weeks and two days of the filing of this order, 2) coordinate with the American embassy in N'Djamena, Chad and Chad's immigration and airport authorities to facilitate Yaide's departure to the United States, 3) work with the relevant airlines to pre-clear Yaide for his flight and address any issues that may arise regarding his flights, 4) work with any third-country immigration and airport authorities to facilitate Yaide's transit through those countries during his return to the United States, 5) provide Yaide with all documentation necessary for entry into the United States upon his arrival, 7) work with the authorities at the airport where he will enter the United States to facilitate his entry, 6) allow Yaide to enter the United States, and 7) allow Yaide's attorneys to meet him upon arrival and accompany him through immigration and customs processing. The Government shall coordinate with Yaide's counsel to facilitate his prompt return, and keep Yaide's counsel informed of its efforts and Yaide's travel itinerary. The parties are to inform the Court immediately if it proves impossible to return Yaide to the United States within the timeline contemplated above.

**IT IS SO ORDERED.**

Dated: December 18, 2019

CHARLES R. BREYER
United States District Judge