IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDERAMAN OUMAR YAIDE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHAD WOLF, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-07874-CRB<br><br>**ORDER GRANTING MOTION FOR ATTORNEY FEES** |

Abderaman Oumar Yaide moves for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). The Court grants his motion. The Court determines that there is no need for oral argument.

## I.  BACKGROUND

Yaide is a native and citizen of Chad who has resided in the United States without legal status since 2009. Order Granting TRO (dkt. 20) at 1. His initial applications for relief from removal were denied by an immigration judge in 2014. Id. Chad criminalized homosexuality in 2017 and Yaide came out as gay in 2019. Id. On October 24, 2019, Yaide moved for the Board of Immigration Appeals (BIA) to reopen his applications for asylum, withholding of removal, and protection under the Convention Against Torture based on these developments. Mot. to Reopen (dkt. 3-1) at 1, 14.

Just before midnight on December 1, 2019, Yaide was taken from Yuba County Jail to the Sacramento airport and flown to Chicago, where he landed the morning of December 2, 2019. Yaide was then placed on a flight to Addis Ababa, Ethiopia, and then another flight to N'Djamena, Chad. Second McMahon Decl. (dkt. 18-1) ¶¶ 10–12. Yaide

was accompanied by two ICE officers for the entire journey. Id. ¶ 12.[1] The government did not provide Yaide's counsel with notice of Yaide's removal until Yaide's deportation was in progress. See EMC Habeas Petition (dkt. 1) at 3. Indeed, when Yaide was in Chicago awaiting departure to Addis Ababa, an ICE officer told his counsel that he was still at the Yuba County Jail. Second McMahon Decl. ¶ 6.

Despite repeatedly asking ICE officials about Yaide's status, Yaide's counsel was not informed that Yaide was being deported until after Yaide's flight had left Chicago for Addis Ababa. Id. ¶ 11. Once aware of Yaide's status, Yaide's counsel (on Yaide's behalf) petitioned the Court for a writ of habeas corpus, arguing that Yaide's removal violated his right to pursue his Motion to Reopen under the Due Process Clause. EMC Habeas Petition at 11–12; Yaide Itinerary (dkt. 14-2). Later that day, Judge Chen enjoined Yaide's removal until the Court had ruled on a fully briefed motion for a TRO. EMC TRO (dkt. 10); Yaide Supp. Br. (dkt. 18) at 4; Yaide Itinerary. Judge Chen's Emergency Order instructed the government "to take all steps necessary to immediately contact ICE and inform ICE of this order." EMC TRO. Yaide's flight from Addis Ababa to N'Djamena departed approximately five hours after the Emergency Order issued. Second McMahon Decl. ¶ 11; Yaide Itinerary.

While Yaide remained in Chad, the parties briefed his motion for a TRO. See Opp. to Mot. for TRO (dkt. 14); Reply (dkt. 16). The government opposed Yaide's motion on mootness grounds and did not address the merits. See Opp. to Mot. for TRO. The Court then ordered supplemental briefing regarding its jurisdiction over Yaide's motion. See Minute Entry (dkt. 17). The government argued that the Court lacked jurisdiction based on Yaide's location outside the United States and 8 U.S.C. § 1252(g), see Gov's Supp. Br. (dkt. 19) at 2. The Court determined that it had jurisdiction and, partly due to the government's failure to oppose Yaide's motion on the merits or address Yaide's due process arguments, granted Yaide's motion for a TRO and ordered the government to

---

[1] Yaide was handcuffed on his flight to Chicago, but not on his subsequent flights. See Yaide Errata (dkt. 21) at 2.

return Yaide to the United States.  See Order Granting TRO.[2]

On June 24, 2020, the BIA granted Yaide's Motion to Reopen.  See Third McMahon Decl. (dkt. 52-2) at 18–20.  Yaide now seeks $23,922.95 in attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).[3]

## I.   LEGAL STANDARD

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter unreasonable exercise of government authority."  Ardestani v. INS, 502 U.S. 129, 138 (1991).  To accomplish this objective, the EAJA provides that "a court shall award to a prevailing party other than the United States fees . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action," unless either of two exceptions applies.  28 U.S.C. § 2412(d)(1)(A).[4]  A court is not required to award a prevailing party fees if the court finds that (1) "the position of the United States was substantially justified," or (2) "special circumstances make an award unjust."  Id.  Only the "substantially justified" exception is at issue here.  If the government wishes to invoke that exception after an EAJA movant "has established that it is a prevailing party, the burden is on the government to show" that the exception applies.  Ibrahim v. U.S. Dep't of Homeland Security, 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc) (citation omitted).[5]

---

[2]  The government voluntarily dismissed its appeal of the Court's ruling, see Ninth Circuit Order Dismissing Appeal (dkt. 47), and the parties stipulated to dismiss this action subject to briefing on Yaide's motion for attorneys' fees, see Joint Stipulation (dkt. 50).

[3]  Yaide moved for $22,289.07 in EAJA fees, Mot. for EAJA Fees (dkt. 52), but supplemented his request based on the 7.9 hours his counsel spent working on Yaide's reply brief, see Supp. Summary of Hours (dkt. 54-2) at 1.

[4]  A litigant is a "prevailing party" for purposes of the EAJA if he "has been awarded some relief by the court."  Buckhannon Bd. And Care Home, Inc. v. West Virginia Dep't. of Health and Human Resources, 532 U.S. 598, 603 (2001).  The government does not dispute that Yaide is a prevailing party.  Similarly, the government does not dispute that Yaide's motion for fees was timely under 28 U.S.C. § 2412(d)(1)(B).

[5]  The burden of "pleading" that the government's position was not substantially justified falls on the EAJA claimant.  See Scarborough v. Principi, 541 U.S. 401, 415 (2004).  But once the claimant satisfies that pleading requirement, as Yaide has, the government has the burden of showing that its position was substantially justified.  See Scarborough, 541 U.S. at 415; Ibrahim, 912 F.3d at 1167.

3

## II. DISCUSSION

### A. Entitlement to EAJA Fees

The burden of showing that its "position" was substantially justified applies not only to "the government's attorneys' conduct during litigation," but also "the action or failure to act by the [government] upon which the civil action is based." Ibrahim, 912 F.3d at 1168. Courts are to conduct these "two inquiries," then assess the government's position as an "inclusive whole, rather than as atomized line-items." Id. at 1168, 1169 (quoting Jean, 496 U.S. at 161–62). The EAJA thus provides for attorneys' fees "when an unjustifiable agency action forces litigation, and the agency then tries to avoid . . . liability by reasonable behavior during the litigation." Id.; see also United States v. Marolf, 277 F.3d 1156, 1161 (9th Cir. 2002) (requiring the government to establish that it was substantially justified both in taking its "original" administrative action and in later "defending the validity of that action in court" (citation omitted)).

Although the phrase "substantially justified" is ambiguous, in this context it means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." Pierce, 487 U.S. at 565 (internal quotation marks omitted). Courts must determine whether there is a "reasonable basis both in law and fact" for the government's position, not whether that position was "justified to a high degree." Id. (citation omitted); see also Ibrahim, 912 F.3d at 1168 ("That the government lost . . . does not raise a presumption that its position was not substantially justified."). In sum, the key question is whether the government's conduct leading to and during the litigation, taken as a whole, had a reasonable basis in law and fact.

As this standard makes clear, underlying government actions lacking any legal or factual basis are not substantially justified. For example, the Ninth Circuit has held that "a due process violation is . . . enough to trigger a finding that the government was not 'substantially justified' under the EAJA." United States v. $12,248 U.S. Currency, 957 F.2d 1513, 1517 n.5 (9th Cir. 1992) (emphasis in original). The Ninth Circuit explained that were such a violation insufficient to defeat a claim of substantial justification, "the

4

EAJA would amount to nothing but a hollow statutory shell offering little of substance to prevailing parties." Marolf, 277 F.3d at 1162 (quoting $12,248 U.S. Currency, 957 F.3d at 1517 n.5). Courts have also found that the government's underlying actions were not substantially justified when they resulted from administrative blunders like failing to provide notice to a person with a known interest in property subject to forfeiture, id. at 1160, 1162, or accidentally placing a person on a no-fly list, Ibrahim, 912 F.3d at 1170.

Various factors may determine whether there was a reasonable basis for the government's attorneys' litigation positions. In particular, "the views of other courts on the merits . . . can be relevant." Pierce, 487 U.S. at 568. If the government suffered a "string of losses" on the same question, it might be "indicative" that the government's position was not substantially justified. Id. at 569. But when this "category of objective indicia" is not "enough to decide" whether the government's position was substantially justified, courts assess the strength of the "actual merits of the government's litigating position." Id.

Here, the government has not carried its burden of showing that its position was substantially justified.

The government's conduct giving rise to this litigation was not substantially justified. Because a due process violation may "trigger a finding that the government was not substantially justified," Marolf, 277 F.3d at 1162, the government has the burden of showing that deporting Yaide was not a due process violation. But at every stage of this litigation, the government has declined to address Yaide's due process argument on the merits, leaving the court to assume that deportation would have deprived Yaide of due process. The government opposed Yaide's motion for a TRO on mootness and statutory jurisdictional grounds. See Opp. to Mot. for TRO; Gov's Supp. Br. Even now, the government does not squarely contend that deporting Yaide was lawful under the Due Process Clause. See Opp. to Mot. for EAJA Fees (dkt. 53) at 12. The government's argument that its actions were authorized by certain regulations and agency guidance, see id. at 10–12, does not address Yaide's constitutional claim. And the government's

5

argument that Yaide could have continued litigating his motion to reopen from "afar," id. at 12, does not address Yaide's argument that he would have been unable to continue litigating the motion from Chad, given the high likelihood that he would be tortured or killed there, see EMC Habeas Petition at 11–12.

The government's attempts to distinguish other EAJA cases finding a lack of substantial justification for due process violations are unavailing. The government argues that these cases "do not address removal and are thus distinct." Opp. to Mot. for EAJA Fees at 12. The government provides no persuasive basis for distinguishing due process violations in the removal context from other due process violations. The government also argues that, in general, a due process violation can be substantially justified given the Supreme Court's statement that a "not correct" position can nonetheless be substantially justified. Id. (quoting Pierce, 487 U.S. at 566 n.2). Whatever the merits of this argument, it is precluded by Marolf's holding that a due process violation is enough to defeat a claim of substantial justification. See 277 F.3d at 1162; see also Ibrahim, 912 F.3d 1147 (citing Marolf with approval).

The government's conduct during this litigation was also not substantially justified. The government's position on the merits of Yaide's due process claim is not the only mystery that the government has left for the Court to solve. Regardless whether Yaide's counsel was entitled to notice of Yaide's deportation, the government's explanation for why Yaide's counsel was provided with false information consists of apparent breakdowns in ICE's administrative processes. Opp. to Mot. for EAJA Fees at 3–4. The government's failure to keep track of Yaide while he was in custody plainly delayed Yaide's counsel in moving for a TRO. See id. It so happens that said delay, and the departure of Yaide's flight to Addis Ababa during it, formed the bases for the government's mootness argument and part of its statutory jurisdictional argument. See Opp. to Mot. for TRO; Gov's Supp. Br. at 2. Also missing is any explanation for why the government ignored Judge Chen's Emergency Order, which issued well before Yaide's flight departed Addis Ababa for N'djamena. The government's blunders, whether bureaucratic accidents or intentional

efforts to circumvent the Court's jurisdiction, formed the factual circumstances giving rise to this litigation.  Cf. Ibrahim, 912 F.3d at 1170; Marolf, 277 F.3d at 1162.

The conclusion that the government's position was not substantially justified is unaffected by authority supporting the government's jurisdictional argument.  The government based its argument partly on 8 U.S.C. § 1252(g), which deprives courts of jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against an alien."  The Court held that § 1252(g) did not strip its jurisdiction, relying on Ninth Circuit precedent, see Gutierrez-Chaves v. INS, 298 F.3d 824, 829–30 (9th Cir. 2002), and a similar Northern District of California decision, Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1142202, at *20–21 (N.D. Cal. March 2, 2018).  Nevertheless, the Court acknowledged "that some Northern District of California decisions" featuring similar or comparable facts had held "that § 1252(g) strips courts of jurisdiction over habeas petitions seeking to enjoin removal during the pendency of a motion to reopen."  Order Granting TRO at 6 (collecting cases).  Given these decisions, the government's jurisdictional argument could "satisfy a reasonable person."  Pierce, 487 U.S. at 565.  But assessing the government's conduct as an "inclusive whole," Ibrahim, 912 F.3d at 1169 (citation omitted), and accounting for the government's failure to address key legal and factual issues, the government has not carried its burden.

Therefore, Yaide is entitled to attorneys' fees under the EAJA.

**B.     Reasonableness of EAJA Fees**

If a plaintiff establishes that he is entitled to EAJA fees, those fees must be "reasonable" and must not exceed the $125 per-hour statutory maximum "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  The Ninth Circuit calculates an upward adjustment to the statutory maximum based on "the annual average consumer price index figure for all urban consumers . . . for the years in which counsel's work was performed."  Thangaraja v. Gonzales, 428 F.3d 870, 877 (9th Cir. 2005).

Yaide seeks $23,922.55 in fees based on the hours his legal team spent on this litigation and the EAJA maximum rate as modified by the Ninth Circuit. Mot. for EAJA Fees (dkt. 52) at 10–11. The Court has reviewed Yaide's counsel's time entries and finds that the amount requested is reasonable. The government's main argument against the amount requested is that whenever more than one of Yaide's lawyers or outside counsel participated in a task, it represented "duplication of effort" or "redundancy." See Opp. to Mot. for EAJA Fees at 14–16. This would be news to most law firms and the clients they bill. Lawyers often work in teams to accomplish tasks, particularly in urgent circumstances. See, e.g., Nadarajah v. Holder, 569 F.3d 906, 925 (9th Cir. 2009). The Court declines to penalize Yaide's lawyers for collaborating to achieve a favorable outcome for their client.[6]

### III.   CONCLUSION

For the foregoing reasons, the Court grants Yaide's motion for attorneys' fees.

**IT IS SO ORDERED.**

Dated: September 30, 2020

CHARLES R. BREYER
United States District Judge

---

[6] The government also argues that Yaide seeks compensation for 2.4 hours of "clerical tasks." Opp. to Mot. for EAJA Fees at 15. The Court finds that these tasks, which included communicating with the Court and formatting briefing and exhibits under unique time constraints, were not purely clerical.